**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000096
27-JUN-2019
08:00 AM**

NOS. CAAP-16-0000096 & CAAP-16-0000597

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
JESSE W. JONES, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-0865)


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, and Reifurth and Chan, JJ.)

These consolidated appeals arise out of Defendant-Appellant Jesse W. Jones's conviction of sexual assault and kidnapping.  Jones was found guilty by a jury on two counts of Sexual Assault in the First Degree in violation of Hawaii Revised Statute ("HRS") section 707-730(1)(a)[1], one count of Sexual Assault in the Third Degree in violation of HRS section 707-732(1)(f)[2], and one count of Kidnapping in violation of HRS

---

[1]     A person commits Sexual Assault in the First Degree if he or she "knowingly subjects another person to an act of sexual penetration by strong compulsion[.]"  Haw. Rev. Stat. § 707-730(1)(a) (Supp. 2011).

[2]
              Sexual assault in the third degree.  (1) A    person commits the offense of sexual assault in the third degree if:

          . . . .

     (f)    The person knowingly, by strong compulsion, has sexual contact with another person or causes another person to have sexual contact with the actor.

Haw. Rev. Stat. § 707-732(1)(f) (Supp. 2011).

section 707-720(1)(e)[3/]. Jones was ordered to pay restitution and sentenced to prison for three twenty-year terms and one five-year term, with the terms to run concurrently. In appellate case number CAAP-16-0000096, Jones appeals from the Judgment of Conviction and Sentence; Notice of Entry entered on January 22, 2016 ("Judgment") by the Circuit Court of the First Circuit ("Circuit Court").

Jones subsequently filed a motion for reconsideration of his sentence and for appointment of a three-member panel to evaluate his fitness. The Circuit Court denied the motion and on July 26, 2016, entered the Order Denying Defendant Jesse W. Jones' Motion for Reconsideration of Sentence and for Appointment of Three Panel ("Order").[4/] In appellate case number CAAP-16-0000597, Jones appeals from the Order. For the reasons explained below, we affirm the Order but vacate the Judgment and remand the case to the Circuit Court for further proceedings.

I.    Background

At trial, the complaining witness ("CW") testified that Jones approached her at approximately 4:00 a.m. on June 3, 2012, as she was walking to her hostel. She agreed to meet Jones later that day for dinner and did not object to holding hands and kissing him prior to dinner. At various times, the CW told Jones that she had to be back at her hostel by 10:30 p.m. By the time Jones paid for dinner, it was almost 10:00 p.m. Instead of taking her home, Jones drove CW to Sandy Beach where he confronted her in a raised voice about medication she had taken at the restaurant. CW testified that she was afraid and wanted

---

[3/]

> Kidnapping. (1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to:
>
> . . . .
>
> (e)    Terrorize that person or a third person[.]

Haw. Rev. Stat. § 707-720(1)(e) (Supp. 2011).

[4/]    The Honorable Dean E. Ochiai entered the Judgment and the Order. He presided, along with the Honorable Richard K. Perkins, over various pre-trial proceedings. The Honorable Michael D. Wilson presided over the jury trial.

to calm Jones down.

According to the CW, Jones then touched her breast and sexually penetrated her with fingers twice. The CW testified that she was in survival mode, which meant staying calm, listening to him, and performing various sexual acts. This appeared to calm Jones down. Jones offered her a white pill without indicating what it was. She got scared, jumped out of the car and ran away while screaming for help.

In his interview with Honolulu Police Department Detective Dru Akagi, a video of which was subsequently admitted into evidence at trial, Jones explained that after unsuccessfully attempting to restrain CW by pulling her back into the car, he drove off. The CW's belongings, including a bag, passport and camera, remained in the car. Jones further explained that, the CW asked if he wanted to have sex. He admitted to touching her breasts and genital area but denied penetrating her with his fingers. Later, he admitted that his finger "went inside a little." He also said that CW offered to perform oral sex.

## II. Points Of Error

On appeal, Jones contends that : (1) he was not fit to proceed or able to meaningfully participate in his own defense (a) at trial or (b) at the motion for reconsideration of his sentence;[5] (2) it was plain error to admit Detective Akagi's testimony as to his opinion of Jones's guilt or innocence; (3) there was insufficient evidence for all the counts of sexual assault because Jones established that the CW had impliedly consented; and (4) it was plain error for the defense to stipulate Jones's statements concerning voluntariness into evidence.

## III. Standards Of Review

### Competency to Stand Trial

"[T]he question of whether a defendant lacks capacity either to understand the proceedings against him or her or,

---

[5] We address the first point of error in CAAP-16-96 together with his only point of error in CAAP-16-597, with the second point focusing exclusively on the motion for reconsideration of Jones's sentence.

> alternatively, to assist in his or her defense '*is primarily a matter for the professional determination of the examiners appointed by the trial court.*'" [*State v. Castro,*] 93 Hawai'i [424,] 426 [n.1], 5 P.3d [414,] 416 [n.1 (2000)] (emphasis added)(citation omitted). Further, "inasmuch as a trial court's ruling on competency entails its assessment of the reports and testimony of the panel of examiners, as well as its observational assessment of the defendant in court, its ruling is reviewable on appeal for an abuse of discretion." *Id.* (citing *State v. Janto,* 92 Hawai'i 19, 29, 986 P.2d 306, 316 (1999))[.]

*State v. Tierney,* 127 Hawai'i 157, 168-69, 277 P.3d 251, 262-63 (2012) (original brackets omitted). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Cullen,* 86 Hawai'i 1, 9, 946 P.2d 955, 963 (1997) (quoting *State v. Arceo,* 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996)).

### *Motion for Reconsideration of Sentence*

"A circuit court's ruling with regard to a party's motion for reconsideration is reviewed on appeal for an abuse of discretion." *State v. Oughterson,* 99 Hawai'i 244, 253, 54 P.3d 415, 424 (2002).

### *Admission of Lay Witness Opinion Testimony*

"In Hawaii, admission of opinion evidence is a matter within the discretion of the trial court, and only an abuse of that discretion can result in reversal." *State v. Tucker,* 10 Haw. App. 73, 89, 861 P.2d 37, 46 (1993).

### *Sufficiency of the Evidence*

> We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction. . . . The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Keawe,* 107 Hawai'i 1, 4, 108 P.3d 304, 307 (2005) (quoting *State v. Batson,* 73 Haw. 236, 248, 831 P.2d 924, 931 (1992). "[A]n appellate court will not overturn a conviction by a jury if 'viewing the evidence in the light most favorable to the [State], there is substantial evidence to support the conclusion of the trier of fact.'" *State v. Matavale,* 115

Hawai'i 149, 158, 166 P.3d 322, 331 (2007) (quoting *State v. Moniz*, 92 Hawai'i 472, 475, 992 P.2d 741, 744 (App. 1999)). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion." *State v. Pratt*, 127 Hawai'i 206, 223, 277 P.3d 300, 317 (2012) (quoting *State v. Bui*, 104 Hawai'i 462, 467, 92 P.3d 471, 476 (2004)).

### Voluntariness of Statement

> "We apply a *de novo* standard of appellate review to the ultimate issue of the voluntariness of a confession." We thus "examine the entire record and make an independent determination of the ultimate issue of voluntariness based upon that review and the totality of the circumstances surrounding the defendant's statement."

*State v. Gella*, 92 Hawai'i 135, 142, 988 P.2d 200, 207 (1999) (citations and brackets omitted) (quoting *In re John Doe*, 90 Hawai'i 246, 251, 978 P.2d 684, 689 (1999)). "However, it is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trial judge." *Id.* (quoting *State v. Buch*, 83 Hawai'i 308, 321, 926 P.2d 599, 612 (1996)).

> "Our review of whether a defendant's statement was in fact coerced requires determination of whether the findings of the trial court are clearly erroneous." "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed."

*Id.* (citations and brackets omitted) (quoting *Buch*, 83 Hawai'i at 321, 926 P.2d at 612).

### Ineffective Assistance of Counsel

The proper standard for claims of ineffective assistance of counsel on appeal is whether, "viewed as a whole, the assistance provided was 'within the range of competence demanded of attorneys in criminal cases.'" *Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (brackets omitted) (quoting *State v. Antone*, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980)).

> General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry. Specific actions or omissions alleged to be error but which had an obvious tactical basis for *benefitting* the

> defendant's case will not be subject to further scrutiny. If, however, the action or omission had no obvious basis for benefitting the defendant's case *and* it "resulted in the withdrawal or substantial impairment of a potentially meritorious defense," then it will be evaluated as information that an ordinary competent criminal attorney should have had.

*Id.* (ellipses and brackets omitted) (quoting *Briones v. State*, 74 Haw. 442, 462-63, 848 P.2d 966, 976 (1993)). "[M]atters presumably within the judgment of counsel, like *trial strategy*, 'will rarely be second-guessed by judicial hindsight.'" *State v. Richie*, 88 Hawaiʻi 19, 39-40, 960 P.2d 1227, 1247-48 (1998) (quoting *State v. Smith*, 68 Haw. 304, 311, 712 P.2d 496, 501 (1986)).

### *Jury Instructions*

> When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. However, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.
>
> . . . Once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt.

*State v. Pond*, 118 Hawaiʻi 452, 461-62, 193 P.3d 368, 377-78 (2008) (brackets omitted) (quoting *State v. Nichols*, 111 Hawaiʻi 327, 335, 337, 141 P.3d 974, 982, 984 (2006)).

IV. Discussion

    A.    The Circuit Court did not abuse its discretion in finding that Jones was fit to proceed to trial or in refusing the motion for reconsideration of Jones's sentence.

In his first point of error, Jones contends that he was not fit to proceed or able to meaningfully participate in his

defense at trial and at sentencing.

Jones's fitness to proceed was evaluated several times throughout the course of the proceedings. During the pre-trial stage, a three-member panel was appointed. One expert found Jones unfit, another found him fit but also either depressed or malingering, and the last found him fit but wanted Jones to have a neuropsychological evaluation. The Circuit Court found Jones unfit to proceed on December 13, 2012 and had him committed until he became fit.

A half-year later, the Circuit Court considered more reports and testimony from various experts, each of whom found that Jones was fit to proceed with the exception of one expert who was concerned that Jones may decompensate under the stress of the trial. After also being able to observe him, the Circuit Court found Jones to be fit to proceed to trial on May 31, 2013.

In *State v. Fleming*, No. CAAP-14-0000987, 2017 WL 3614419 (Haw. Ct. App. Aug. 23, 2017), this Court held that the circuit court did not abuse its discretion when it denied a motion for a mental examination to determine competency based on the record before it, which included two separate pretrial examinations, examiners that had all agreed that the defendant was fit, and the court's own observation of the defendant. *Id.* at *12. The record here is like that in *Fleming*, as the Circuit Court considered reports, heard from experts and the defendant. Thus, the Circuit Court did not abuse its discretion in finding Jones fit to stand trial.

As for Jones's motion for reconsideration of the sentence, Jones contends that he was not fit to proceed to sentencing. The Circuit Court found Jones fit after a third evaluation prior to sentencing, where the Circuit Court heard from six experts: five found him fit and one felt that Jones was functionally impaired when it came to appreciating that he behaved in a criminal manner. Thus, the Circuit Court did not abuse its discretion in denying this motion considering the evidence it had before it. Jones also failed to present a new argument in his motion for reconsideration. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Hawaiʻi 85, 88, 839 P.2d 10, 16

(1992) ("The purpose of a motion for reconsideration is to allow a party to present new evidence and/or arguments that could not have been presented . . . earlier . . . ."); *Cho v. State*, 115 Hawai'i 373, 384, 168 P.3d 17, 28 (2007). Finally, any error in allowing sentencing to proceed would be harmless as Jones received the minimum sentences, which he will serve concurrently.

B.    It was not plain error for the Circuit Court to allow Detective Akagi to comment on Jones's guilt or innocence.

In his second point of error, Jones argues that it was plainly erroneous for the Circuit Court to allow Detective Akagi to comment on Jones's guilt or innocence in response to a question posed by his own defense counsel:

> [DEFENSE COUNSEL]:  So you didn't like what he was telling you?  Let me rephrase that.  That was not a fair question.
>
> [DETECTIVE AKAGI]:  Okay.
>
> [DEFENSE COUNSEL]:  You didn't believe he was telling you the truth as you knew it?
>
> [PROSECUTOR]:  Objection, your honor. Calls for the witness to comment on credibility.
>
> THE COURT:  Objection's overruled.
>
> [DETECTIVE AKAGI]:  I didn't feel like he was telling me the whole events that occurred that night.

In support, Jones cites to *State v. Marsh*, 68 Haw. 659, 660-61, 728 P.2d 1301, 1302 (1986), which concerned a prosecutor's personal opinion expressed in her closing statement. Detective Akagi's testimony, in this case, was offered only in direct response to the question posed by Jones's own counsel.  It was counsel's strategic decision that Jones would benefit by establishing that Jones's testimony remained consistent despite Detective Akagi's expressions of disbelief.  Even if we were to override defense counsel's determination of trial strategy and conclude that it was error for the court to not intervene sua sponte and disallow counsel's question or Detective Akagai's answer, it was harmless since it merely confirmed what the video,

already admitted into evidence, showed.[6]  As Akagi's answer and its context formed the basis for Jones's defense, no substantial prejudice was caused to Jones's rights.

C.   There was sufficient evidence to find that Jones was guilty.

In his third point of error, Jones contends that he "was under the reasonable mistaken belief that the CW was performing consensual based on the interaction between the two" and that "the CW's testimony corroborates that the Appellant was not on notice that the CW did not" consent.  The test is whether there was enough credible evidence "of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion."  *Pratt*, 127 Hawaiʻi at 223, 277 P.3d at 317 (quoting *Bui*, 104 Hawaiʻi at 467, 92 P.3d at 476).

To provide substantial evidence for Sexual Assault in the First Degree, the State was required to show that Jones knowingly[7] and by strong compulsion[8] subjected the CW to acts of

---

[6]     At various times during the interrogation, Detective Akagi said: "You're not telling me the whole truth"; "This is your opportunity," "Do the right thing," "I want the truth," "if you be honest about what happened last night or June 3rd, you know, that's the first step in taking . . . doing the right thing".

[7]     "Knowingly" is defined as follows:

   (a)   A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature.

   (b)   A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

   (c)   A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

Haw. Rev. Stat. § 702-206(2) (1993).

[8]          "Strong compulsion" means the use of or attempt to use one or more of the following to overcome a person:

      (1)   A threat, express or implied, that places a person in fear of bodily injury to the individual or another person, or in fear that the person or another person will be kidnapped;

      (2)   A dangerous instrument; or

(continued...)

sexual penetration[9] by inserting his finger into her genital opening. To prove the elements of Sexual Assault in the Third Degree, the State was required to show that Jones knowingly and by strong compulsion subjected the CW to sexual contact or caused the CW to have sexual contact[10] with him by placing his hand on her breast. The evidence came primarily from the testimony of CW, which provided substantial evidence for all counts of sexual assault. The CW stated that Jones touched her breasts, her vaginal area from outside the underwear then inside it, and penetrated her twice with his fingers. Further, Jones admitted to knowingly placing his hand on CW's breast. As for the element of strong compulsion, the CW testified that Jones used physical force against her when he put her seat down, grabbed her arms with force and then used his hands to put physical pressure close to her neck. As to consent, CW testified that she was scared, believed the situation was life-threatening, that she unsuccessfully tried to escape the car, and cooperated only to calm him down. The CW was prevented from answering her phone several times before Jones threw her all of her belongings, including her phone into the backseat. Overall, there was sufficient evidence to find that Jones used strong compulsion.

To prove Kidnapping, the State was required to show that Jones intentionally[11] or knowingly restrained[12] the CW with

_____

[8] (...continued)
        (3)   Physical force.

Haw. Rev. Stat. § 707-700 (Supp. 2011).

[9]     "Sexual penetration" is defined, in part, as "(1) Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required." Haw. Rev. Stat. § 707-700.

[10]     "Sexual contact" is defined as "any touching, other than acts of 'sexual penetration', of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts." Haw. Rev. Stat. § 707-700.

[11]     "Intentionally" is defined as follows:

       (a)   A person acts intentionally with respect to his
           conduct when it is his conscious object to

                                       (continued...)

the intent to terrorize[13] her.  In addition to the CW's
aforementioned testimony, Jones stated that the CW told him that
she wanted to be back in Waikiki after dinner, but that, instead,
he drove to Sandy Beach to confront her about her medication and
talk to her about his paying for both their dinners.  When CW
tried to get out of the car, Jones tried to pull her back in.
Thus, there was substantial evidence that suggests that Jones
intentionally or knowingly took CW to Sandy Beach against her
wishes to have sex with her and that he took measures to keep her
in the car.

> D.   It was not plain error for the "Defense to stipulate
>      Appellant's statement into evidence regarding the
>      voluntariness issue."

Jones states his point of error three times throughout
his opening brief.  Each time, the subject of the point is "the
Defense," who we understand to be Jones's trial counsel, who,
Jones alleges, erred in stipulating Jones's statements into
evidence.  We understand, in that case, Jones to contend that he
received ineffective assistance of counsel.  On the third
occasion, however, Jones expands on his point and offers two
cases which address appellate review of trial court decisions to

---

[11] (...continued)
            engage in such conduct.

> (b)  A person acts intentionally with respect to
>      attendant circumstances when he is aware of the
>      existence of such circumstances or believes or
>      hopes that they exist.

> (c)  A person acts intentionally with respect to a
>      result of his conduct when it is his conscious
>      object to cause such a result.

Haw. Rev. Stat. § 702-206(1).

[12]    In pertinent part:

> "Restrain" means to restrict a person's movement in such a
> manner as to interfere substantially with the person's liberty:

> (1)  By means of force, threat, or deception[.]

Haw. Rev. Stat. § 707-700.

[13]    In the jury instructions, the "intent to terrorize" is defined as
"the intent to cause or the reckless disregard of the risk of causing another
person to have serious alarm for personal safety."

admit statements which were allegedly coerced. Jones, however, offers no argument explaining how those cases apply to the facts of his case, while adding a non-specific reference to his "disabilities" requiring a determination of "reversible error."

To the extent that Jones intends to argue what he says in his point of error, i.e. ineffective assistance of trial counsel, we deem that argument waived, as none is made. Haw. R. App. P. 28(b)(7) ("Points not argued may be deemed waived.") To the extent that Jones intends instead to argue that *the Circuit Court* erred in *admitting* the stipulated statements, we deem that argument waived as well. *Id.*

E. The Circuit Court erred in not giving a jury instruction regarding consent.

Although not objected-to at trial and not properly raised as a point of error on appeal, Jones argues that the Circuit Court erred in not instructing the jury as to the definition of consent and specifically that consent could be either express or implied.[14] The Circuit Court mentioned consent, but did not define it, in its instructions defining the "compulsion" and "restraint" elements of the various sections under which Jones was tried: "'Compulsion' means absence of consent, or a threat, express or implied, that places a person in fear of public humiliation, property damage, or financial loss." Furthermore, "consent" was addressed in passing throughout the parties' closing arguments.

Jones is correct that the testimony in the case does not show that the CW ever expressly objected to anything, and both accounts of the underlying incident indicate that the CW initiated some of the sexual contact, although CW explains that this only reflected an attempt to calm Jones. As such, though, Jones argues the not implausible proposition that he was under a reasonable mistaken belief that the incident was consensual.

---

[14] Jones failed to comply with Hawaiʻi Rules of Appellate Procedure Rule 28(4) as this argument was not mentioned in his points of error, questions presented, or standards of review. However, as an appellate court, we can take notice a plain error not properly presented. *State v. Getz*, 131 Hawaiʻi 19, 27, 313 P.3d 708, 716 (2013); *State v. Pond*, 118 Hawaiʻi 452, 467, 193 P.3d 368, 383 (2008).

Jones's failure to properly raise the issue on appeal notwithstanding, it is raised. Because consent was the sole issue raised by Jones's defense, the jury instructions in this case should have included a definition of consent as well as an explanation that consent can be express or implied and that consent may be withdrawn.

Jury instructions in such a case, whether or not they were requested by a party, should include the definition of consent as a matter of standard practice, especially when "the only real question before the jury was whether Complainant consented to the sexual acts, either expressly or impliedly." *State v. Shabazz*, 98 Hawai'i 358, 385, 48 P.3d 605, 632 (App. 2002) (vacating the defendant's conviction for Second Degree Sex Assault, in part, on the basis of the trial court's failure to instruct the jury on the issue of implied consent); *State v. Ancheta*, 108 Hawai'i 467, 469, 121 P.3d 932, 934 (App. 2005) (holding that it was plain error when the trial court failed to instruct on implied consent on charges of first and second degree sex assault); cf. *State v. McFadden*, No. CAAP-14-0000802, 2015 WL 5567996 at *7 (Haw. Ct. App. Sept. 21, 2015) (vacating defendant's conviction on Second Degree Sex Assault, in part, because there was evidence that could be construed by reasonable jurors to have caused defendant to reasonably believe that he had the complainant's consent, and yet no instruction on mistake or ignorance was given by the court).

The evidence in this case could support Jones's theory of consent which operates as a defense to all the counts. Thus, Jones was entitled to a jury instruction that defined consent and explained that consent could be implied, as this was the central theory of his defense. *State v. Locquiao*, 100 Hawai'i 195, 205, 58 P.3d 1242, 1252 (2002) ("[A] defendant is entitled to an instruction on every defense or theory of defense having any support in the evidence[.]" (quoting *State v. Hironaka*, 99 Hawai'i 198, 204, 53 P.3d 806, 812 (2002))).

This error also applies to the count of Kidnapping where consent was also a defense. Thus, we vacate the Judgment for the failure to include in the jury instructions a definition

of consent or any explanation that consent can be either express or implied.

V.    Conclusion

Based on the foregoing, we affirm the Order, vacate the Judgment, and remand the case to the Circuit Court for further proceedings.

DATED:   Honolulu, Hawai'i, June 27, 2019.


On the briefs:

Shawn A. Luiz
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge